### In the matter, of the petition of Benjamin Hartwell, for leave to raise a mill-dam.

*Eminent domain* is the inherent right necessarily resting in every sovereignty to control and regulate the relative rights of individuals, where those rights are of a public nature, and pertain' to its citizens in common. Hence, no constitutional provision is necessary to give it force.

The power of eminent domain may be exercised by the sovereignty itself, or may be delegated.

It is for the legislative department to determine what enterprises are of a public and what of a private character.

The provisions of the Act of 1865, "to encourage the erection and support of water power manufactories," (excepting perhaps the last clause of section 5,) are not unconstitutional.

Costs are awarded only by statute.

In proceedings had under the Act of 1865, "to encourage the erection and support of water power manufactories," the respondent is not entitled to costs, except in those cases in which the petitioner moves for a jury, to re-assess the damages reported by the committee, and the jury fail to lessen the damages. The words "fees and expenses" in Sec. 11, em brace only the fees of officers of the Court, and the committee or jury.

*Kalamazoo Circuit, May, 1871.*

In this case a petition was filed May 28, 1870, praying for authority to raise the dam across the Kalamazoo River, on the land of the petitioner, on Sec. nineteen,(19,) Town two (2) south, range nine (9) west, so as to raise the water of said river 3½ inches higher, making a rise of 8 inches in all. The object was to increase the power to propel additional machinery. The petition shows that the effect of raising the dam would be to over-

flow certain lands belonging to George K. Field, and also lands belonging to one Andrew McCleary, and that the petitioner had been unable to agree upon the damages to be paid to each on account of the overflowing of their lands as contemplated.— The prayer of the petition was for the appointment of a committee to establish the height of the dam and to assess the sums to be paid as damages for flowing the lands of McCleary and Field, to the end that the " petitioner may acquire the right to flow said lands according to the provisions of the act of March 21, 1865, relating to such cases." Upon the filing of this petition, an order was entered appointing a committee and directing them to hear and decide the matters contained in said petition, and if said commissioners should be of the opinion that the flowing of the land in the manner proposed would be for public use, to establish the height to which the dam may be built and kept, and thereby the water raised, and the length of time or period during which the same may be kept up during each year thereafter, and to assess the sum to be paid as damages occasioned or to be occasioned by reason of the contemplated overflow of water.

In obedience to this order, the committee proceeded to view the premises and to take proofs, and thereafter reported to the Court that the mill now used by the petitioner is for public use and that the proposed addition would be for public use, and estimated the damages to be paid by reason of the proposed overflow, and find that the dam should be increased 3½ inches, and to be kept up through the entire year.

The petitioner now moves for a confirmation of this report. To this, objection is made by McCleary, on the alleged ground that the act under which the proceeding has been had is unconstitutional.

*May & Buck,* for the petitioner.

*Edwards & Sherwood,* for the respondent.

*By the Court,* BROWN, J.—When the question as to the constitutionality of the act under consideration was first presented, I entertained grave doubts as to how it should be decided.

The effect of a confirmation of this report must be to de-

prive the respondent, McCleary, of the use of his lands and to transfer the right of its occupancy for a particular purpose to another.

It is not contended that he or any of those under whom he claims title have, by any act of theirs, forfeited the title or the right to the uninterrupted enjoyment of the premises.

Can he be legally divested of his right to the uninterrupted enjoyment of his estate, and if so, by what law ? The validity of the enactment under which the petitioner seeks to acquire an interest in the respondent's lands is denied by the respondent, who asserts that it is repugnant to the constitution of the State.

The interests of individuals in property are traceable to the government ; and in this country the aggregate body of the people in their sovereign capacity constitute the government. It is true that the government grants to individuals the right to take and appropriate estates as their own ; and yet the doctrine has always been recognized that the *eminent domain*, the right which the government retains over the estates of individuals, is a sufficient warrant for resuming such estates for public use.

The title to much of the lands in this country has been derived from the Federal Government and not from the State ; and it would therefore seem that the Federal rather than the State government would be justified in the exercise of the power of *eminent domain*. But inasmuch as under our somewhat anomalous or at least peculiar system, each State is charged with the protection of its citizens in their persons and property, it has been held that the character of sovereignty in the State is necessary to enable it to discharge its functions properly in that respect, requires that the power of *eminent domain* shall pertain to and reside in the State government. This being so, it will be seen that the right is founded more in the necessity growing out of our relations to each other and to society than of a mere implied reservation in the grantor, where the government grants the estate. Indeed, I think it is quite as correct to say that *eminent domain* is the inherent right necessarily resting in every sovereignty to control and regulate the relative rights of individuals where those rights are of a public

nature and pertain to its citizens in common. This being so, no constitutional provision is necessary to give it force. The power is not born of written constitutions but is usually limited by them. It therefore follows that the people, through their representatives are to determine the question as to the propriety and expediency of exercising this right—they are to say what property may be taken for public use, and to declare what shall be deemed public and private uses, limited only by the Constitution.

Judge Cooley in his work on *Cons. Law*, 524, says this right "is the authority which must rest in every sovereignty to control and regulate those rights of a public nature which pertain to its citizens in common, and to appropriate and control individual property for the public benefit, as the public safety, convenience or necessity may demand."

This power may be exercised by the sovereignty itself or may be delegated. In the case under consideration it is claimed that the power has been delegated.

The respondent insists that the purpose for which the power is invoked, is not of such a character as to authorize its exercise. Does the public safety, necessity or convenience require it ?—and by public we do not mean, necessarily, the people of the whole State, county, or even city or township, but the people of a community or neighborhood may be called the public in this sense, and when we speak of a public enterprise we mean such an one as is common to the people—as may be used by them, and opposed to *private*. But what branch of the government is to determine what enterprises are of a public and what of a private character? In the case of *Beekman vs. S. & S. R. R. Co.*, 3 *Paige* 73, Chancellor Walworth says : " If the public interest can be in any way promoted by the taking of private property, it must rest in the wisdom of the Legislature to determine whether the benefit to the public will be of sufficient importance to render it expedient for them to exercise the right of eminent domain. Upon this point, see the cases reported in 4 *Pick.*, 463 ; 7 *Id.*, 453, 475, 476 ; 12 *Cush.*, 477 ; 1 *Chandler*, 80.

The object sought in this case by the exercise of the power of eminent domain, is to enable the petitioner to run the

machinery for a foundry and machine shop, and if it were to be left to the courts to determine the question as to whether the flowing of the lands of another for such a purpose would be for public use, there is no question but that the point is settled in favor of the claim of the petitioner; for in this class of cases the courts have, whether it was necessary to the decision of the cases before them or not, announced in almost, if not every instance, the opinion that the taking of property as proposed, is for the public use. My attention has been called by counsel, to the statutes of Maine, New Hampshire, Ohio, Massachusetts, Connecticut, Tennessee, Kentucky and Wisconsin, similar to the one under consideration, and to the fact that in five of these States these acts to encourage the erection and support of water power manufactories, have been held to be constitutional. It must be held that the Legislature has the power to provide for the taking of property as proposed by the petitioner.

Has that power been exercised in accordance with the requirements and provisions of the Constitution? *Sec.* 2, of *Art.* 18, requires that "the necessity for using such property, and the just compensation to be made therefor, shall be ascertained by a jury of twelve freeholders, residing in the vicinity of the property, *or* by three commissioners appointed by a Court of record." Sec. 3 of the act of 1865, *Sess. L.* 1865, p. 651, is as follows:

" The petition, unless the parties thereto shall agree upon the judgment that shall be rendered thereon, shall be heard and decided by a committee of three judicious, disinterested freeholders of the county, to be appointed by the Circuit Court of the county, at such time and place, and with such notice to those interested as the Circuit Court shall order; and if such committee shall be of opinion that the flowing such land in the manner proposed is or will be for public use, they shall establish the height to which such dam may be built or kept, and thereby the water raised, the length of time or period during which the same may be kept up in each year thereafter, and shall assess the sum to be paid to the respondent, by the petitioners for the right to flow such land according to their re-

port, and make return of their doings to the Court; and in estimating the damages they shall take into account any damages occasioned to any other land of the respondent, as well as damage to the land overflowed, and having assessed such damage, shall make return of their doings to said Circuit Court, and said Court shall add fifty per cent. to said sum as the sum to be paid for such right to flow such land."

It is true that section five of the act provides that on the coming in of the report of the committee, the Court may set the same aside, and may inquire for itself whether the erection of such dam is for public use or not, notwithstanding any finding of the committee. It is argued that this clause is unconstitutional, in that it confers powers upon the Court, which the Constitution requires shall be exercised by a jury or by three commissioners. It appears to me that there is much force in this argument. But as a law may be constitutional in some of its provisions and unconstitutional in others, it is only necessary to inquire whether, for the purpose sought, enough of the independent provisions of the act, not subject to these objections, are to be found to authorize the exercise of the power invoked. Section 3 does not appear to be open to the objection urged, and as the proceedings were had under that section, and as the Court has not been called upon to, nor has it acted under the provisions of section five, I can see no valid objection to the confirmation of the report.

Let an order be entered accordingly.

The report of the committee being confirmed, the respondent, Andrew McCleary, by his counsel, moves the Court for an order that the petitioner pay the respondent's costs and expenses of the proceeding. The motion is based upon two grounds, viz:

1.   That by the general statute relating to costs in the Circuit Court, being Chap. 149, R. S. of 1846, amended by act approved April 15th, 1871, the respondent is entitled to costs, and

2.   That the act under which the proceedings in question were instituted, being Act No. 304, of Laws of 1865, as amended, provides for the recovery of costs by the respondent.

HARTWELL MATTER, PETITION OF

This Court has already decided in *Lovell vs. Bartholomew et. al.*, 1 *Nisi Prius*, 117, that as costs are awarded only by statute, when the statute fails to provide for costs none can be taxed.— Therefore where costs are given by either the general law or the particular statute referred to, the motion cannot be granted.

It is claimed by respondent's counsel that so far as the award of damages by the committee is concerned, the respondent is the plaintiff. But by the statute under which this proceeding is had, the party now moving for costs is denominated " the respondent," and even if the word "plaintiff" in Sec. 3, of Chap. 174, *Compiled Laws*, could be considered as synonomous with the words " prevailing party," it might well be doubted whether the petitioner is not the prevailing party so far as the award of damages is concerned, inasmuch as the petitioner virtually asks leave by his petition to pay to the respondent whatever damages may be awarded to him. And a more conclusive objection to the respondent's claim under the general statute is that Sec. 3 above referred to, provides that " in the *following cases*" the plaintiff " shall recover his costs," and as no proceeding like the one in question is included in the enumeration of cases in that section, the effect of the words " in the following cases" would seem to be to restrict the recovery of costs to the cases mentioned in the several subdivisions of that section.

Upon an examination of the Act of 1865, before referred to, it does not appear that the Legislature contemplated the payment of costs by the petitioner to respondent except in those cases in which the petitioner should move for a jury to re-assess the damages reported by the committee and the jury should not lessen the damages. In such cases, by a provision contained in Sec. 8, the petitioner would be obliged to pay costs to the respondent.

By Sec. 11, of the act in question, it is provided that " the fees and expenses of the petition shall be paid by the petitioner," &c.— But the words " fees and expenses" in Sec. 11, are evidently used in contradistinction to the word " costs" in Sec. 8, and must, I think, be construed to embrace only the fees of officers of the Court 'and the committee or jury.

Therefore as neither the general statute, nor the special act in question, provide for the payment of costs to the respondent, the motion for costs must be denied.